IN RE: THE MEDEIROS REVOCABLE TRUST



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:IN RE: THE MEDEIROS REVOCABLE TRUST

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 IN RE: THE MEDEIROS REVOCABLE TRUST
2019 OK CIV APP 44
Case Number: 116915
Decided: 07/01/2019
Mandate Issued: 08/07/2019
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2019 OK CIV APP 44, __ P.3d __

 


IN RE: THE MEDEIROS REVOCABLE TRUST, Petitioner/Appellee,
v.
MORGAN STANLEY SMITH BARNEY LLC, Respondent/Appellant.
APPEAL FROM THE DISTRICT COURT OF
COMANCHE COUNTY, OKLAHOMA
HONORABLE LISA E. SHAW, TRIAL JUDGE
AFFIRMED IN PART, REVERSED IN PART AND REMANDED
Phillip G. Whaley, Grant M. Lucky, RYAN WHALEY COLDIRON JANTZEN PETERS & WEBBER PLLC, Oklahoma City, Oklahoma, for Respondent/Appellant,
Arthur R. South, Vickie Leyja, Lawton, Oklahoma, for Petitioner/Appellee.
BRIAN JACK GOREE, CHIEF JUDGE:
¶1 Morgan Stanley Smith Barney, LLC (Morgan Stanley) filed a motion to compel arbitration and the trial court denied it. We have jurisdiction to review the decision de novo as an interlocutory order appealable by right. Okla. Sup. Ct. R. 1.60(i); 12 O.S. §1879(a)(1); Johnson v. Convalescent Center of Grady County, LLC, 2014 OK 102, ¶5, 341 P.3d 71, 73. The primary issue is whether a receiver, who did not sign the agreement containing the arbitration clause, is nevertheless bound by it. We answer yes and reverse.
I.
Background
¶2 Milton and Pearl Medeiros formed the Medeiros Revocable Trust, naming themselves as trustees. They signed a client agreement and made deposits to an account in California with Citigroup Smith Barney (Smith Barney). The client agreement contained an arbitration clause, the terms of which are undisputed.[1] It is also undisputed that Morgan Stanley is the successor to Smith Barney. Milton and Pearl agreed that their contract would be binding on their assignees or successors in interest as well as successors to Smith Barney.[2]
¶3 Pearl Medeiros died in 2015 and was survived by her husband, Milton, her son, Jon Katvala, and her daughter, Karen Stewart. Jon and Karen (Petitioners) filed this suit in Comanche County, Oklahoma, to construe the trust. A few weeks later, Milton, together with his daughter, Kimberly Sue Lafinier, and his step-daughter, Carol A. Phillips, commenced an action in Washoe County, Nevada, asserting a different construction of the trust and its assets. The ownership and control of the funds on deposit with Morgan Stanley is highly contested.
¶4 The district court in Comanche County appointed Allen McCall (Receiver) to receive and collect the outstanding assets including the Morgan Stanley accounts. Four months later, the court entered judgment in favor of Petitioners in the amount of $500,000, against Carol Philips, Kimberly Medeiros Lafinier, and Milton H. Medeiros, jointly and severally. In the same judgment, the court ordered Petitioners to participate with Receiver "to pursue all legal remedies to return the sum of $500,000.00 and all other assets to this Trust to be distributed only by further orders of this Court."
¶5 Receiver filed a petition asking for judgment against Morgan Stanley for reimbursement to the trust in the amount of $440,537.05.
[3] Morgan Stanley filed a motion to compel arbitration based upon the agreement between Milton and Pearl Medeiros and Morgan Stanley's predecessor-in-interest, Smith Barney. This is an interlocutory appeal from the court's March 9, 2018, order denying Morgan Stanley's motion to compel arbitration.
II.
Personal Jurisdiction
¶6 Morgan Stanley proposes the Oklahoma district court does not have personal jurisdiction over it. In Montgomery v. Airbus Helicopters, Inc., 2018 OK 17, 414 P.3d 824, the court stated: "[I]f a defendant has purposefully directed activities at the residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities, specific jurisdiction over a nonresident defendant may exist unless jurisdiction would be unreasonable or would offend the traditional notions of substantial justice and fair play." Montgomery, ¶16. Morgan Stanley concedes that it mailed client account records to the Oklahoma residence of Milton and Pearl Medeiros in 2014 or 2015. It is plain that Morgan Stanley held assets owned by the Medeiros Revocable Trust and it directed communications regarding those assets to the trustees who were residents of Oklahoma. The Receiver's claim arises from the account agreement between Morgan Stanley and Milton and Pearl Medeiros. It does not offend traditional notions of fair play and substantial justice to require Morgan Stanley to defend itself in Oklahoma. We conclude the district court had personal jurisdiction over Morgan Stanley and the trial court did not err when it denied Morgan Stanley's motion to dismiss on that basis.
III.
Arbitration
¶7 When a court is asked to compel arbitration it must first determine whether the parties agreed to arbitrate that dispute. Johnson v. Convalescent Center of Grady County, LLC, 2014 OK 102, ¶6, 341 P.3d 71, 73. We review an order granting or denying a motion to compel arbitration de novo. Thompson v. Bar-S Foods Co., 2007 OK 75, ¶9, 174 P.3d 567, 572.
¶8 Receiver did not sign the arbitration agreement with Morgan Stanley and therefore urges he cannot be compelled to arbitrate. Receiver contends he is an arm of the court whereas Morgan Stanley argues Receiver stepped into the shoes of the trustees. Both are correct.
¶9 Receivers are appointed by the court and serve under its authority when they bring actions to collect debts. 12 O.S. §§1551, 1554. A receiver is an officer of the court who holds property and funds coming into his hands by the same right and title as the person for whose title he is the receiver. Norman v. Trison Development Corporation, 1992 OK 67, ¶7, 832 P.2d 6, 8. The receiver is the representative of the court regarding the right of possession of property, but the right to receive it derives from the entity that has been placed in receivership. Farrimond v. State ex rel. Carroll Fisher, Insurance Commissioner, 2000 OK 52, ¶15, 8 P.3d 872, 875. A receiver's claims are subject to the claims and defenses possessed by all interested parties. Oklahoma Dept. of Securities ex rel. Faught v. Blair, 2010 OK 16, ¶36, 231 P.3d 645, 664. For example, a receiver of an insolvent corporation takes the property for the creditors subject to such equities, liens, or encumbrances which existed against the property at the time of his appointment. Id. at ¶36, referencing Harn v. Smith, 1921 OK 328, ¶9, 204 P. 642, 647.
¶10 However, none of the aforementioned cases hold that a receiver who did not agree to arbitrate can nevertheless be compelled to do so. Receiver relies on Carter v. Schuster, 2009 OK 94, 227 P.3d 149, to support his argument that he is not required to arbitrate with Morgan Stanley. Carter cited an opinion of the 2nd Circuit that identified five theories for binding non-signatories to arbitration agreements, and an entity's status as a receiver for a signatory was not one of them.[4] The holding in Carter is that an agent who signs a contract containing an arbitration provision, in his capacity as a corporate representative, cannot be compelled to arbitrate claims made against him as an individual in absence of fraud or some wrongful act. Carter, supra at ¶26. We disagree with Receiver that Oklahoma recognizes only these five exceptions to the general rule that non-signatories cannot be bound by arbitration agreements.
¶11 Morgan Stanley directs our attention to Javitch v. First Union Securities, Inc., 315 F.3d 619 (6th Cir. 2003). In Javitch, the court found that a receiver was bound to an arbitration agreement to the same extent that the receivership entities would have been absent the appointment of the receiver. Javitch, p. 627. In reaching its decision, the court assessed the nature of the claims being asserted by the receiver and the authority granted to him in the appointing order.
¶12 In the case now before us, Receiver claims that Morgan Stanley was aware of the conflicting claims to the ownership of the trust funds, but nevertheless transferred the funds to another brokerage firm without disclosure to Petitioners. If the original trustees had commenced such an action against Morgan Stanley it would have been subject to arbitration. It is equally clear that the Receiver's appointing order authorized him to collect trust assets against Morgan Stanley.
¶13 When Receiver initiated a claim for the benefit of the trust that contracted with Morgan Stanley, his interest was subject to the agreements in that contract. Because the original trustees agreed to arbitration, Receiver's derivative claim is likewise subject to arbitration. The trial court's denial of Morgan Stanley's motion to compel arbitration was error.
IV.
Bond and Stay of Proceedings
¶14 After filing its petition-in-error, Morgan Stanley filed a motion in the district court requesting that the trial court proceedings be stayed during the pendency of the appeal. Receiver responded that 12 O.S. §990.4(D) required Morgan Stanley to post a bond. The trial court entered an order granting the stay contingent upon Morgan Stanley posting a bond for $440,537.05.[5] Morgan Stanley asks that we review the trial court's order.
¶15 After a petition-in-error is filed, the trial court retains jurisdiction to, among other things, decide motions to stay the enforcement of interlocutory orders appealable by right. Rule 1.37(a)(4). A party aggrieved by such an order may seek review in the appellate court by motion without amending the petition in error. Rule 1.37(b).
[6] Morgan Stanley has filed a timely motion seeking review of the trial court's order requiring a bond.
¶16 The appeal in this case is not from a judgment or a final order but from an interlocutory order denying a motion to compel arbitration.
[7] Therefore, a stay of proceedings is governed by 12 O.S. §990.4(D) and Rule 1.15(b).[8] Accordingly, the trial court had discretion to stay the proceedings on terms which would protect the rights of the parties. Morgan Stanley's position is that requiring a bond equal to the amount in controversy was an abuse of discretion. We agree.
¶17 The appealed order denied arbitration and retained in the district court jurisdiction over Receiver's claim against Morgan Stanley. No judgment was ever entered against Morgan Stanley. Morgan Stanley requested a stay of the proceedings, not a stay of execution or enforcement of a judgment. A bond was not required to secure Receiver's or Petitioners' rights which remain contingent and unliquidated.
V.
Conclusion
¶18 The order filed March 9, 2018, is reversed because the trial court erroneously denied Morgan Stanley's motion to compel arbitration. Morgan Stanley's motion to review the stay order is granted pursuant to Okla. Sup. Ct. R. 1.37(b). The order filed November 30, 2018 is affirmed insofar as it stays the proceedings in the district court during the pendency of this appeal. The order is reversed as to the requirement that Morgan Stanley post a bond in the amount of $440,537.05.
¶19 The case is remanded for further proceedings consistent with this opinion. AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
JOPLIN, P.J., and BUETTNER, J., concur.
FOOTNOTES
[1] Paragraph 6 of the Agreement provided: "I agree that all claims or controversies, whether such claims or controversies arose prior, on or subsequent to the date hereof, between me and SB and/or any of its present or former officers, directors, or employees concerning or arising from (i) any account maintained by me with SB individually or jointly with others in any capacity: (ii) any transaction involving SB or any predecessor firms by merger, acquisition or other business combination and me, whether or not such transaction occurred in such account or accounts; or (iii) the construction, performance or breach of this or any other agreement between us, any duty arising from the business of SB or otherwise, shall be determined by arbitration before, and only before, any self-regulatory organization or exchange of which SB is a member."
[2] Paragraph 7 of the Agreement provided: "The provisions of this Agreement shall be continuous, shall cover individually and collectively all accounts which I may open or reopen with SB, and shall insure to the benefit of SB's present organization, and any successor organization or assigns; and shall be binding upon my heirs, executors, administrators, assigns or successors in interest." Any question of who are the successor trustees to The Medeiros Revocable Trust is neither presented nor decided in this appeal.
[3] Receiver's petition was not commenced as a separate action. It was filed in the same case as Petitioners' suit filed in Comanche County.
[4] "The United States Court of Appeals for the Second Circuit has identified five theories for binding nonsignatories to arbitration agreements: 1) incorporation by reference, when a party has entered into a separate contractual relationship with the nonsignatory incorporating the existing arbitration clause; 2) assumption, when subsequent conduct indicates nonsignatory has assumed the obligation to arbitrate; 3) agency, when traditional principles of agency law may bind a nonsignatory to an arbitration agreement; 4) veil-piercing/alter ego, when the corporate relationship between a parent and its subsidiary are sufficiently close to justify piercing the corporate veil and holding one corporation legally accountable for the actions of the other, such as, to prevent fraud or other wrong or when a parent dominates and controls a subsidiary; and 5) estoppel, when the claims are integrally related to the contract containing the arbitration clause." Carter v. Schuster, 2009 OK 94, ¶14, 227 P.3d 149, 153, quoting Thomson--CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773, 776--779 (2d Cir.1995).
[5] This is the sum Receiver claims Morgan Stanley must distribute to the Medeiros Revocable Trust.
[6] Okla. Sup. Ct. R. 1.37(b) provides: "Except as provided in Subdivision (a)(3) & (10), review of the trial court's ruling upon any of the matters set forth in part (a) of this Rule shall be by motion filed in the Supreme Court which shall be entertained in the principal appeal. However, a petition in error or amended petition in error shall be filed in the Supreme Court to seek review of the trial court's ruling when statute or the Rules of the Supreme Court require review of the trial court's ruling by a petition or amended petition in error. See, e.g., Rule 1.36(k). When review of a trial court's ruling is sought by motion, it must be filed in the Supreme Court within thirty (30) days of the date the trial court's ruling is filed in the trial court."
[7] A stay of enforcement of a judgment, decree or final order is obtained by filing with the court clerk a written undertaking and the posting of a supersedeas bond or other security. 12 O.S. §990.4(A). Section §990.4(D) provides: "In any action not provided for in subsection A, B or C of this section, the court may stay the enforcement of any judgment, decree or final order during the pendency of the appeal or while any post trial motion is pending upon such terms as to bond or otherwise as it considers proper for the security of the rights of the parties."
[8] Okla. Sup. Ct. R. 1.15(b) provides: "Stay of enforcement of the decision of a lower tribunal in any proceeding other than an appeal from a final decision of a district court shall be governed by any applicable statutory law or rules governing that tribunal. Except where an applicable statute or rule provides otherwise, the lower tribunal may in its sound discretion stay enforcement of the decision which is the subject of the proceedings in this Court on terms which will protect the rights of the parties. No motion shall be filed in this Court to stay the decision of the lower tribunal where such relief may be sought from the lower tribunal until application has first been presented to and ruled upon by the lower tribunal."




 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1992 OK 67, 832 P.2d 6, 63 OBJ 1444, Norman v. Trison Development Corp.
Discussed
 1921 OK 328, 204 P. 642, 85 Okla. 137, HARN v. SMITH
Discussed
 2007 OK 75, 174 P.3d 567, THOMPSON v. BAR-S FOODS COMPANY
Discussed
 2009 OK 94, 227 P.3d 149, CARTER v. SCHUSTER
Discussed at Length
 2010 OK 16, 231 P.3d 645, DEPT. OF SECURITIES ex rel. FAUGHT v. BLAIR
Discussed
 2014 OK 102, 341 P.3d 71, JOHNSON v. CONVALESCENT CENTER OF GRADY COUNTY LLC
Discussed at Length
 2018 OK 17, 414 P.3d 824, MONTGOMERY v. AIRBUS HELICOPTERS
Discussed
 2000 OK 52, 8 P.3d 872, 71 OBJ 1769, Farrimond v. Fisher
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 990.4, Stay of Enforcement of Judgment, Decree, or Final Order
Discussed at Length
 12 O.S. 1879, Appeals
Cited
 12 O.S. 1551, Receiver - Appointment of
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA